UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
|---|---|
| | Master Case No. C-07-5944 JST |
| | Case No. 14-cv-2058 JST |
| This Order Relates To:<br><br>Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al., Case No. 14-cv-2058 JST | **ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC DEFENDANTS** |

The Direct Purchaser Plaintiffs ("DPPs") move for preliminary approval of class action settlement with the Mitsubishi Electric Defendants.[1] ECF No. 5099. For the reasons below, the Court will grant the motion

**I.   BACKGROUND**

   **A.   Factual and Procedural Background**

This multidistrict litigation arises from an alleged conspiracy to fix prices of cathode ray tubes ("CRTs"). The alleged conspiracy ran from March 1, 1995 through November 25, 2007. The first DPPs filed a class action complaint on behalf of themselves and all others similarly situated in November 2007, alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. Numerous additional actions followed. The Judicial Panel on Multidistrict Litigation ("JPML") transferred all related actions to this Court on February 15, 2008. Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the

---

[1] The Defendants include Mitsubishi Electric Corporation; Mitsubishi Electric US, Inc. (formerly known as Mitsubishi Electric & Electronics USA, Inc.); and Mitsubishi Electric Visual Solutions America, Inc. (formerly known as Mitsubishi Digital Electronics America, Inc.) (collectively, the "Mitsubishi Electric Defendants" or "Defendants").

nationwide class of direct purchasers on May 9, 2008. ECF No. 282.

Discovery and motion practice in this Multidistrict Litigation case ("MDL") have been extensive. For example, "[t]he parties have reviewed and analyzed millions of pages of documents produced in discovery," "responded to hundreds of interrogatories and requests for admission," and conducted over "125 depositions." ECF No. 5099-1 at 2. Moreover, as the DPPs put it, "[v]irtually every legal or factual issue of any substance has been the subject of motion practice in this case, or in the cases brought by the DAPs, or both." ECF No. 5099 at 8.

There have been eight prior settlements between the DPPs and other Defendants in this case, valued at $10 million ("CPT" or "Chunhwa"),[2] $15 million ("Philips"),[3] $17.5 million ("Panasonic"),[4] $25 million ("LG"),[5] $13.5 million ("Toshiba"),[6] $13.45 million ("Hitachi"),[7] $33 million ("Samsung SDI"),[8] and $9.75 million ("Thomson")[9]. Id. at 9. In each of these prior DPP settlements, the Court certified a settlement class, appointed Saveri & Saveri, Inc. as Settlement Class Counsel, and found that the manner and form of providing notice of the settlements to class members was the best notice practicable under the circumstances. Id. at 9-10 (listing specific ECF entries). For each, the Court also entered orders of final approval and final judgments of dismissal with respect to the settling (and released) defendants. See ECF Nos. 1413, 1414, 1509, 1510, 1622, 1792, 3932, 3933, 4416, 4417.

On July 8, 2015, the Court entered an order granting the DPP's motion for class certification against the Mitsubishi Electric Defendants. ECF No. 3902. The DPPs later provided notice to the Class, which explained the opt-out procedure. ECF No. 5099 at 10. Nineteen entities

---

[2] Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.
[3] Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria Electronica Ltda.
[4] Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd.
[5] LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.
[6] Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.
[7] Hitachi, Ltd.; Hitachi Displays, Ltd. (n/k/a Japan Display Inc.) ("Hitachi Displays"); Hitachi America, Ltd.; Hitachi Asia, Ltd.; Hitachi Electronic Devices (USA) Inc.
[8] Samsung SDI Co. Ltd. (f/k/a Samsung Display Devices Co., Ltd.); Samsung SDI America, Inc.; Samsung SDI Brasil, Ltd.; Tianjin Samsung SDI Co., Ltd.; Samsung Shenzhen SDI Co., Ltd.; SDI Malaysia Sdn. Bhd.; SDI Mexico S.A. de C.V.
[9] Thomson SA, Thomson Consumer Electronics, Inc., and Technologies Displays Americas LLC.

2

opted out. Id. The DPPs have now moved for preliminary approval of their class action settlement with the Mitsubishi Electric Defendants. ECF No. 5099.

### B. Terms of the Agreement

The Settlement provides that Defendants will pay the DPP Class $75,000,000 in cash in exchange for dismissal with prejudice and a release of all claims asserted in the Second Amended Complaint. ECF No. 5099-1 at 13-16. Specifically, the DPP Class will relinquish their claims against the "Mitsubishi Electric Releasees."[10] ECF No. 5099-1 at 14. The release excludes claims for product defects, personal injury, and ordinary commercial disputes. Id. Indirect purchaser claims under state law for purchases from entities other than defendants and alleged co-conspirators (and their related companies) are also excluded. Id.

The Settlement will become final upon: "(i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of final judgment of dismissal with prejudice as to the Mitsubishi Electric Defendants; and (ii) the expiration of the time for appeal or, if an appeal is taken, affirmance of the judgment with no further possibility of appeal." ECF No. 5099 at 12; ECF No. 5099-1 at 12-13.

Subject to the approval and direction of the Court, the Settlement payment will be used to: (1) pay members of the class; (2) pay attorneys' fees, costs, and expenses to the extent later awarded by the Court; (3) pay all taxes associated with any interest earned on the escrow account;

---

[10] Defined as follows in the Settlement:

> "Mitsubishi Electric Releasees" shall refer to the entities that are referred to collectively as "Mitsubishi" in paragraph 32 of the Second Amended Direct Purchaser Plaintiffs' Class Action Complaint Against Mitsubishi Electric Defendants (dated August 6, 20 15) ("SAC"), and to all of the Mitsubishi Electric Defendants' respective past and present, direct and indirect, parents, subsidiaries, joint ventures regarding CRT products, including with NEC, and affiliates, and all of their respective past and present, direct and indirect, parents, subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. "Mitsubishi Electric Releasees" does not include any defendant in the Action other than the Mitsubishi Electric Defendants and those entities defined in the SAC as "Mitsubishi."

ECF No. 5099-1 at 9.

1    and (4) up to $300,000 may be used to pay for Notice costs and future costs incurred in the
2    administration and distribution of the Settlement payments.  ECF No. 5099 at 11.  Payments to the
3    class will be on the basis of each class member's pro rata share of the total affected sales, with no
4    portion reverting to Defendants.  ECF No. 5099-1 at 4.  "[T]to determine each Class member's
5    CRT purchases, CRT tubes (CPTs/CDTs) are calculated at full value while televisions are valued
6    at 50% and computer monitors are valued at 75%."  Id.

### C. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## II. PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### A. Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Courts generally employ a two-step process in evaluating a class action settlement.  First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class.  See Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004).  "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  City of Seattle, 955 F.2d at 1276.  The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval."  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.").  Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and

falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079 (quotation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id. at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness. Id. Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." Id.

### B. Analysis

#### 1. Non-Collusive Negotiations

In examining the means by which the parties arrived at the Settlement, the Court concludes that the negotiations and agreement were non-collusive. The Settlement was reached after the parties engaged in extensive motion practice and participated in a full day of formal mediation overseen by Magistrate Judge Corley. ECF No. 5099-1 at 3. These facts support the conclusion that the Settlement is non-collusive and likely to benefit the class members. See, e.g., Harris v. Vector Marketing Corp., No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

#### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Although Class Counsel expresses confidence that they possess sufficient evidence to support a verdict in their favor at trial, Counsel acknowledges that Defendants may persuade a jury that they did not participate in the alleged conspiracy. ECF No. 5099-1 at 3. Defendants will

argue, for example, that they never attended a "glass meeting" and that their CRT market share was small, giving them little incentive to join the conspiracy. Id. Moreover, even if Plaintiffs prevail at trial, there is no guarantee that a jury would award more than $75,000,000. As Counsel notes, in the LCD litigation, the DPPs sought $870 million at trial, but the jury awarded only $87 million. Id. Here, Plaintiffs intend to seek $876 million in damages. ECF No. 5099 at 15. If the jury awards a similar percentage of the request, Plaintiffs' recovery will be only moderately better than the Settlement. Id. Of course, preparing for trial would itself be expensive and further delay any recovery to the class members. In sum, the Court concludes this factor weighs in favor of preliminary approval.

### 3. The Amount Offered in Settlement

To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer. In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Here, $75 million represents 35% of the total Class recovery and 24% of single damages as calculated in Plaintiffs' damage study. ECF No. 5099 at 15. The Court has already found a settlement totally 20% of single damages to be "without question a good recovery and firmly in line with the recoveries in other case." In re: CRT Antitrust Litig., No. C-07-5944 JST, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016). Counsel's arguments about the sheer size of the Settlement are less persuasive. "As the Court has observed in reviewing other settlements, . . . the relevant question is not how large the total dollar amount of the settlement is, but how great a percentage of the potential recovery it represents." Id. at 6. A recovery of 24% – or one in that ballpark – is substantively reasonable and favors approval.

### 4. The Extent of Discovery Completed and the State of the Proceedings

The parties have conducted extensive discovery in this case. Among other things, "[t]he parties have reviewed and analyzed millions of pages of documents produced in discovery," "responded to hundreds of interrogatories and requests for admission," and conducted over "125 depositions." ECF No. 5099-1 at 2. The Court agrees that this discovery process has allowed the parties to gather "sufficient information to make an informed decision about the settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000).

### 5. The Experience and Views of Counsel

Based on his litigation of this case and experience with other class action antitrust cases, Class Counsel believes the Settlement "represents an excellent recovery for the class." ECF No. 5099-1 at 2. This weighs in favor of its approval.[11]

### 6. The Reaction of Class Members to the Proposed Settlement

The Court will wait until the final approval hearing to determine the reaction of the class members to the settlement.

### 7. Preferential Treatment

Under this factor, the Court looks at whether the settlement agreement provides preferential treatment to any class member. Under the Settlement, payments to the class will be on the basis of each class member's pro rata share of the total affected sales, with no portion reverting to Defendants. ECF No. 5099-1 at 4. "[T]to determine each Class member's CRT purchases, CRT tubes (CPTs/CDTs) are calculated at full value while televisions are valued at 50% and computer monitors are valued at 75%." Id. This process is fair and has been approved previously both in this case and in the LCD litigation. Id.

### 8. The Presence of Obvious Deficiencies

The Court has reviewed the Settlement and did not find any obvious deficiencies. To the extent any objector calls attention to any such deficiency, the Court will consider it at the fairness hearing.

### IV. NOTICE

The Court must separately evaluate the proposed notice procedure. Under Federal Rule of Civil Procedure 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must state:

---

[11] The Court considers this factor, as it must, but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." Principles of the Law of Aggregate Litigation § 3.05 comment a (2010).

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).[12] Plaintiffs propose sending a "Long Form Notice" to the Class, and publishing a "Summary Notice" in the New York Times and Wall Street Journal. ECF No. 5099-1 at 3-4. Both contain each of the required elements listed above. The notices also provide Class members with a toll-free number to call and a website to check for more information about the Settlement. Id. at 29. Class members are informed how to object to the Settlement and how to attend the Fairness Hearing. Id. at 34-35. Both the Long Form Notice and Summary Notice "clearly and concisely state in plain, easily understood language" the key elements of the Settlement and the Class members rights under it. See Fed. R. Civ. P. 23(c)(2)(B).

This notice plan is substantially similar to the plans approved for the earlier DPP settlements. In re: CRT Antitrust Litig., No. 14-CV-2058 JST, 2015 WL 9266493, at *3 (N.D. Cal. Dec. 17, 2015). The Court approves the notice procedure, with the following alterations:

- First, any objections to the settlement should only be mailed to the Court. Once received by the Court, the Clerk of the Court will file the objections on the Court's electronic filing system. As currently worded, the Class Notice requires objections to be sent to Lead Counsel for Plaintiffs and Counsel for the Mitsubishi Electric Defendants, which is unnecessary, as electronic filing of an objection on the case docket constitutes service on the parties;
- Second, consistent with the Northern District's Procedural Guidance for Class Action Settlements, http://www.cand.uscourts.gov/ClassActionSettlementGuidance, the parties must add the following language to the Class Notice in the answer to Question 10: "You

---

[12] The Notice does not contain information related to (v) or (vi) because the "Class membership has already been determined based on the Class notice provided in December 2015 and the opt-out procedure outlined therein." ECF No. 5099 at 17 n.4.

8

can ask the Court to deny approval by filing an objection. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object."

## V. PLAN OF ALLOCATION

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." In re Oracle Sec. Litig., No. C–90–0931–VRW, 1994 WL 502054, at *1–2 (N.D. Cal. June 16, 1994) (citing Class Pls. v. City of Seattle, 955 F.2d 1268, 1284–85 (9th Cir. 1992)).

The Settlement provides that payments to the class will be on the basis of each class member's pro rata share of the total affected sales, with no portion reverting to Defendants. ECF No. 5099-1 at 4. "[T]to determine each Class member's CRT purchases, CRT tubes (CPTs/CDTs) are calculated at full value while televisions are valued at 50% and computer monitors are valued at 75%." Id. The Court has approved identical plans in previous DPP settlements. See, e.g., In re: CRT Antitrust Litig., 2015 WL 9266493 at *7-8 (Thomson Final Approval Order).

Plaintiffs propose distributing the funds of this Settlement together with the funds from the Thomson and TDA settlements. ECF No. 5099 at 20. The Long Form Notice explains that Class members who already submitted claims under the Thomson/TDA settlement need not submit additional claim forms, but are permitted to supplement or amend their claim forms to add purchases from the Mitsubishi Electric Defendants. ECF No. 5099-1 at 33-34. This consolidation of payment distribution should reduce administrative costs without negatively impacting the DPP Class. The Court preliminarily approves the allocation plan.

## VI. ATTORNEYS' FEES AND EXPENSES

Class Counsel have stated that they intend to apply for an award of attorneys' fees totaling one third of the Settlement Fund along with expenses incurred during the litigation. ECF NO. 5099-21 at 20. Although this matter will be separately briefed, the Court reminds Class Counsel that, absent "special circumstances," the benchmark for attorneys' fees in this Circuit is 25%. Six

(6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)). Counsel should also bear in mind the Court's previously-expressed concerns about some of the expenses incurred in this proceeding. ECF No. 4266 at 11-14.

## CONCLUSION

The Court orders that the Motion for Preliminary Approval is granted. The Court 1) appoints Saveri & Saveri, Inc. as class counsel, 2) approves the notice plan (including the long form notice, ECF No. 5099-1 at 29, the summary notice, id. at 38, and the proof of claim form, id. at 40), and 3) approves the allocation plan.

Plaintiffs' claims administrator shall provide notice of the Settlement Agreement to Class members on or before February 27, 2017. The claims administrator shall publish the Summary Notice in the national editions of the New York Times and the Wall Street Journal on or before March 3, 2017. The claims administrator shall also cause a copy of the class notices and the Settlement Agreement to be posted on the website www.CRTDirectPurchaserAntitrustSettlement.com.

When dissemination of notice is completed, Class Counsel shall cause a declaration to be filed reflecting that the notice has been provided in accordance with this Order. Class members shall have ninety (90) days from the deadline for mailing of notice to complete and send the Proof of Claim form and submit it to the Claims Administrator. In order to provide certainty, any new or supplemental claims must be submitted online or postmarked by May 29, 2017.

Each Class member shall have the right to object to (1) the settlement, and/or (2) the plan of allocation by filing written objections with the Court no later than a date set at least forty-five (45) days after mailing direct notice. Each Class member shall have the right to appear at the Final Approval Hearing by filing a Notice of Intention to Appear no later than a date set at least forty-five (45) days after mailing direct notice. The Court will conduct a Final Approval Hearing on June 8, 2017 at 2:00 p.m. All briefs, memoranda and papers in support of final approval of the Settlement shall be filed no later than twenty-one (21) days before the Final Approval Hearing.

At that hearing, the Court will also hear Plaintiffs' Application for Attorneys' Fees and Expenses and Incentive Awards ("Fee and Expense Application"). Plaintiffs shall file their Fee

10

and Expense Application no later than twenty-one (21) days before the deadline to object to the settlement or plan of allocation. Plaintiffs shall post their fee and expense application and all supporting materials on the website www.CRTDirectPurchaserAntitrustSettlement.com on the same day. Class members shall have the right to object to the fee and expense application by filing a written objection with the Court on or before the deadline to object to the settlement or plan of allocation. Plaintiffs shall file a reply brief responding to any timely objection no later than twenty-one (21) days before the Final Approval Hearing.

IT IS SO ORDERED.

Dated: February 13, 2017

JON S. TIGAR
United States District Judge