UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Order Relates To:<br><br>ALL DIRECT PURCHASER PLAINTIFFS | MDL No. 1917<br><br>Master Case No. C-07-5944 JST<br><br>Case No. 14-cv-2058 JST<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC DEFENDANTS** |
|---|---|

The Direct Purchaser Plaintiffs ("DPPs") move for final approval of their class action settlement with the Mitsubishi Electric Defendants (the "Settlement").[1] ECF No. 5163. No objection to the settlement has been filed with the Court. See ECF No. 5163-1 ("Saveri Decl.") ¶ 2. The Court held a final fairness hearing on June 8, 2017. No objections were presented at the hearing. For the reasons set forth below, the Court hereby grants final approval of the Settlement.

**I.    BACKGROUND**

    **A.    Factual and Procedural Background**

This multidistrict litigation arises from an alleged conspiracy to fix prices of cathode ray tubes ("CRTs"). The alleged conspiracy ran from March 1, 1995 through November 25, 2007. The first DPPs filed a class action complaint on behalf of themselves and all others similarly situated in November 2007, alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. Numerous additional actions followed. The Judicial Panel on Multidistrict Litigation ("JPML") transferred all related actions to this Court on

---

[1] The Defendants include Mitsubishi Electric Corporation; Mitsubishi Electric US, Inc. (formerly known as Mitsubishi Electric & Electronics USA, Inc.); and Mitsubishi Electric Visual Solutions America, Inc. (formerly known as Mitsubishi Digital Electronics America, Inc.) (collectively, the "Mitsubishi Electric Defendants" or "Defendants").

February 15, 2008. Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide class of direct purchasers on May 9, 2008. ECF No. 282.

Discovery and motion practice in this Multidistrict Litigation case ("MDL") have been extensive. For example, "[t]he parties have reviewed and analyzed millions of pages of documents produced in discovery," "responded to hundreds of interrogatories and requests for admission," and conducted over "125 depositions." ECF No. 5099-1 at 2. Moreover, as the DPPs put it, "[v]irtually every legal or factual issue of any substance has been the subject of motion practice in this case, or in the cases brought by the DAPs, or both." ECF No. 5099 at 8.

There have been eight prior settlements between the DPPs and other Defendants in this case, valued at $10 million ("CPT" or "Chunhwa"),[2] $15 million ("Philips"),[3] $17.5 million ("Panasonic"),[4] $25 million ("LG"),[5] $13.5 million ("Toshiba"),[6] $13.45 million ("Hitachi"),[7] $33 million ("Samsung SDI"),[8] and $9.75 million ("Thomson")[9]. Id. at 9. In each of these prior DPP settlements, the Court certified a settlement class, appointed Saveri & Saveri, Inc. as Settlement Class Counsel, and found that the manner and form of providing notice of the settlements to class members was the best notice practicable under the circumstances. Id. at 9-10 (listing specific ECF entries). For each, the Court also entered orders of final approval and final judgments of dismissal with respect to the settling (and released) defendants. See ECF Nos. 1413, 1414, 1509, 1510, 1622, 1792, 3932, 3933, 4416, 4417.

On July 8, 2015, the Court entered an order granting the DPPs' motion for class certification against the Mitsubishi Electric Defendants. ECF No. 3902. The DPPs later provided

---

[2] Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.
[3] Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria Electronica Ltda.
[4] Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd.
[5] LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.
[6] Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.
[7] Hitachi, Ltd.; Hitachi Displays, Ltd. (n/k/a Japan Display Inc.) ("Hitachi Displays"); Hitachi America, Ltd.; Hitachi Asia, Ltd.; Hitachi Electronic Devices (USA) Inc.
[8] Samsung SDI Co. Ltd. (f/k/a Samsung Display Devices Co., Ltd.); Samsung SDI America, Inc.; Samsung SDI Brasil, Ltd.; Tianjin Samsung SDI Co., Ltd.; Samsung Shenzhen SDI Co., Ltd.; SDI Malaysia Sdn. Bhd.; SDI Mexico S.A. de C.V.
[9] Thomson SA, Thomson Consumer Electronics, Inc., and Technologies Displays Americas LLC.

notice to the Class, which explained the opt-out procedure. ECF No. 5099 at 10. Nineteen entities opted out. Id. On February 13, 2017, the Court granted the DPPs' motion for preliminary approval of their class action settlement with the Mitsubishi Electric Defendants. ECF No. 5166.

**B.     The Proposed Settlement**

The Settlement provides that Defendants will pay the DPP Class $75,000,000 in cash in exchange for dismissal with prejudice and a release of all claims asserted in the Second Amended Complaint. ECF No. 5099-1 at 13-16. Specifically, the DPP Class will relinquish their claims against the "Mitsubishi Electric Releasees."[10] ECF No. 5099-1 at 14. The release excludes claims for product defects, personal injury, and ordinary commercial disputes. Id. Indirect purchaser claims under state law for purchases from entities other than defendants and alleged co-conspirators (and their related companies) are also excluded. Id.

The Settlement will become final upon: "(i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of final judgment of dismissal with prejudice as to the Mitsubishi Electric Defendants; and (ii) the expiration of the time for appeal or, if an appeal is taken, affirmance of the judgment with no further possibility of appeal." ECF No. 5099 at 12; ECF No. 5099-1 at 12-13.

Subject to the approval and direction of the Court, the Settlement payment will be used to: (1) pay members of the class; (2) pay attorneys' fees, costs, and expenses to the extent later

---

[10] Defined as follows in the Settlement:

> "Mitsubishi Electric Releasees" shall refer to the entities that are referred to collectively as "Mitsubishi" in paragraph 32 of the Second Amended Direct Purchaser Plaintiffs' Class Action Complaint Against Mitsubishi Electric Defendants (dated August 6, 20 15) ("SAC"), and to all of the Mitsubishi Electric Defendants' respective past and present, direct and indirect, parents, subsidiaries, joint ventures regarding CRT products, including with NEC, and affiliates, and all of their respective past and present, direct and indirect, parents, subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. "Mitsubishi Electric Releasees" does not include any defendant in the Action other than the Mitsubishi Electric Defendants and those entities defined in the SAC as "Mitsubishi."

ECF No. 5099-1 at 9.

3

awarded by the Court; (3) pay all taxes associated with any interest earned on the escrow account; and (4) up to $300,000 may be used to pay for Notice costs and future costs incurred in the administration and distribution of the Settlement payments. ECF No. 5099 at 11. Payments to the class will be on the basis of each class member's pro rata share of the total affected sales, with no portion reverting to Defendants. ECF No. 5099-1 at 4. "[T]to determine each Class member's CRT purchases, CRT tubes (CPTs/CDTs) are calculated at full value while televisions are valued at 50% and computer monitors are valued at 75%." Id.

### C. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## II. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. To assess a settlement proposal, the district court must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id.

### B. Analysis

The Court finds that the class members have received adequate notice and that the proposed settlement is fair, adequate, and reasonable.[11]

---

[11] The Court also finds that the scope of the Settlement Agreement's release, ECF No. 5099-1 at 14, is permissible because the proposed release only releases claims based on the factual predicate of the complaint. See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010).

4

### 1. Adequacy of Notice

The Court previously approved the parties' proposed plan for providing notice to the class. ECF No. 5166 at 7-8. The Court notes that the notice plan was substantially similar to the notice plan used in prior DPP settlements in this case. See Saveri Decl. ¶ 28. The DPPs have shown that the claims administrator has fulfilled the obligations of the notice plan by mailing and emailing notices to class members on February 27, 2017. ECF No. 5126 ("First Christman Decl."). ¶¶ 5-6. The administrator mailed 19,609 class notices via first class mail. ECF No. 5163-2 ("Second Christman Decl.) ¶ 3. 5,185 of those notices were returned as undeliverable, and the administrator located updated addresses for and re-mailed 170 of the notices. Id. The administrator also sent electronic versions of the class notice to 1,343 e-mail addresses. Id. ¶ 3.[12]

DPPs also updated the case-dedicated website with all relevant settlement materials, including the date of and how to object to the Settlement at the final approval hearing. First Christman Decl ¶ 9. In addition, notice was published in two major newspapers on February 28, 2017. Id. ¶ 11; Ex. B-C. Finally, the administrator established a toll-free telephone number to answer questions about the settlement. Id. ¶ 10.

Since the distribution of the class notices, the administrator has received at least 311 new, amended, or supplemental claims. Second Christman Decl ¶ 6. Over 3,000 claims have been received since the initial claim form mailing in 2005. Id.

In sum, the Court concludes that the parties have provided the best practicable notice to class members.

### 2. Fairness, Adequacy, and Reasonableness

In its order granting preliminary approval of this Settlement, the Court analyzed the Hanlon factors enumerated above and determined that the Settlement was fair, adequate, and reasonable. ECF No. 5166 at 4-7. Briefly, the Court made the following conclusions: 1) the parties' extensive motion practice and participation in a full day of formal mediation overseen by Magistrate Judge Corley demonstrated that the negotiations and agreement were non-collusive;

---

[12] Christman originally overstated the number of e-mail addresses to which notices were sent due to the inclusion of duplicate addresses and invalid addresses. Second Christman Decl. ¶ 4.

5

2)Defendants' arguments that they did not participate in the conspiracy and the potential that a jury could award DPPs only a small portion of their damages means DPPs faced substantial risk from further litigation; 3) the $75,000,000 settlement is a strong result when measured against expected recovery;[13] 4) extensive discovery has allowed the parties to gather sufficient information to make an informed decision about the Settlement; 5) experienced counsel for both parties support the Settlement; 6) the Settlement does not provide preferential treatment to any class member; and 7) the Settlement suffers from no obvious deficiencies. Id.

Additionally, the Court notes that no objections to the Settlement have been received from any class member. Saveri Decl. ¶ 2. The reaction of the class to the proposed Settlement therefore supports the conclusion that the Settlement is fair, adequate and reasonable. See Bynum v. Dist. of Columbia, 412 F. Supp. 2d 73, 77 (D.D.C. 2006) ("The low number of opt outs and objectors (or purported objectors) supports the conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of class members."); Pallas v. Pac. Bell, No. C-89-2373 DLJ, 1999 WL 1209495, at *8 (N.D. Cal. July 13, 1999) ("The small percentage--less than 1%--of persons raising objections is a factor weighing in favor of approval of the settlement."); see also In re Patriot Am. Hospitality Inc. Sec. Litig., No. MDL C-00-1300 VRW, 2005 WL 3801594, at *2 (N.D. Cal. Nov. 30, 2005). As the DPPs argue, where "much of the class consists of sophisticated business entities," the inference that the class approves of the settlement is even stronger. See Mot. at 15 (citing Linerboard, 321 F. Supp. 2d at 629).

Balancing all the factors, the Court finds that they support granting final approval. Accordingly, the Court hereby finds that the settlement is fair, adequate, and reasonable, and grants DPPs' motion for final approval of the Settlement.

### III. FINAL APPROVAL OF PLAN OF ALLOCATION

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must

---

[13] Indeed, the $75,000,000 exceeds DPPs' estimate for the single damages attributable to the Mitsubishi Electric Defendants. Saveri Decl. ¶ 2. Moreover, when added to the settlements already obtained by the DPPs, total class recovery now equals 24% of single damages. ECF No. 5163 n.3.

1  be fair, reasonable and adequate." In re Oracle Sec. Litig., No. C–90–0931–VRW, 1994 WL
2  502054, at *1–2 (N.D. Cal. June 16, 1994) (citing Class Pls. v. City of Seattle, 955 F.2d 1268,
3  1284–85 (9th Cir. 1992)).

4  As the Court explained in its order granting preliminary approval, the Settlement provides
5  that payments to the class will be on the basis of each class member's pro rata share of the total
6  affected sales, with no portion reverting to Defendants. ECF No. 5099-1 at 4. "[T]to determine
7  each Class member's CRT purchases, CRT tubes (CPTs/CDTs) are calculated at full value while
8  televisions are valued at 50% and computer monitors are valued at 75%." Id. The Court has
9  approved identical plans in previous DPP settlements. See, e.g., In re: CRT Antitrust Litig., 2015
10 WL 9266493 at *7-8 (Thomson Final Approval Order).

11 Plaintiffs propose distributing the funds of this Settlement together with the funds from the
12 Thomson and TDA settlements. ECF No. 5099 at 20. The Long Form Notice explains that Class
13 members who already submitted claims under the Thomson/TDA settlement need not submit
14 additional claim forms, but are permitted to supplement or amend their claim forms to add
15 purchases from the Mitsubishi Electric Defendants. ECF No. 5099-1 at 33-34. The administrator
16 confirms that it has received over 300 new, amended, or supplemental claims. Second Christman
17 Decl. ¶ 6. This consolidation of payment distribution should reduce administrative costs without
18 negatively impacting the DPP Class.

19 The Court finds that this plan "fairly treats class members by awarding a pro rata share" to
20 the class members based on the extent of their injuries. See In re Heritage Bond Litig., No. 02-
21 ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005). Moreover, "[t]he fact that there
22 has been no objection to this plan of allocation favors" the Court's approval. Id. Accordingly, the
23 Court approves DPPs' plan of allocation.

### IV. ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

Attorneys' fees, expenses, and incentive awards will be addressed in a separate order.

### V. CONCLUSION

It is ordered that:

1. The Court has jurisdiction over the subject matter of this litigation, and all actions within

7

this litigation and over the parties to the Settlement Agreement, including all members of the Class and the Mitsubishi Electric Defendants.

2. For purposes of this Order, except as otherwise set forth herein, the Court adopts and incorporates the definitions contained in the Settlement Agreement.

3. The Court finds that Saveri & Saveri, Inc., previously appointed as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, has and will fairly and competently represent the interests of the Class.

4. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, after a hearing, the Court hereby finally approves and confirms the settlement set forth in the Settlement Agreement and finds that said settlement is, in all respects, fair, reasonable, and adequate to the Class within the meaning of Rule 23, and directs its consummation according to its terms.

5. This Court hereby dismisses on the merits and with prejudice the Action as to the Mitsubishi Electric Releasees against all Class Members and without costs other than those provided for in the Settlement Agreement.

6. The Mitsubishi Electric Releasees are hereby and forever released and discharged with respect to any and all claims or causes of action which the Releasors had or have arising out of or related to any of the Released Claims as defined in the Settlement Agreement.

7. The Proposed Order of Special Master Walker dated August 29, 2016, ECF No. 4802, is vacated and is without any present or future force or effect.[14]

---

[14] Under Rule 54(b), district courts have "complete power" over non-final orders and may vacate or revise them "at any time," if doing so would be "consonant with equity." United States Gypsum Co. v. Pac. Award Metals, Inc., No. C 04–04941 JSW, 2006 WL 1825705, at * 1 (N.D.Cal. July 3, 2006); De La O v. Arnold–Williams, No. CV–04–0192–EFS, 2008 WL 4192033, at * 1 (E.D.Wash. Aug.27, 2008) (quotation marks omitted). "Courts exercising Rule 54(b) power in the settlement context have found that vacating a non-final order is 'consonant with equity' if there are no reasons suggesting the order should not be vacated." Midmoutain Contractors, Inc. v. Am. Safety Indem. Co., No. C10-1239JLR, 2013 WL 5492952, at *4 (W.D. Wash. Oct. 1, 2013). Courts in this circuit have frequently vacated non-final orders in furtherance of settlements. See O'Connor v. Uber Techs., Inc., No. 13-CV-03826-EMC, 2016 WL 6997166, at *2 (N.D. Cal. May 2, 2016) (citing cases).

Here, the parties request the Court vacate Judge Walker's report and recommendation, but provide no authority or analysis in support of the request. Given the balancing test the Court is required to undertake, it would have been helpful for the parties to brief the question of whether vacating Judge Walker's report and recommendation is "consonant with equity." The undersigned has previously rejected similar requests.

8. The notice given to the Class of the Settlement was the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, Subdivisions (c)(2) and (e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.

9. The Plan of Allocation set forth in the Class notice is, in all respects, fair, adequate, and reasonable. Accordingly, the Court hereby grants final approval of the Plan of Allocation.

10. The United States District Court for the Northern District of California shall retain jurisdiction, which shall be exclusive to the extent permitted by law, over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and the Mitsubishi Electric Defendants. The Settlement Agreement shall be governed by and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

11. Without affecting the finality of the Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) any distribution to Class Members pursuant to further orders of this Court; (b) disposition of the Settlement Fund; (c) hearing and determining applications by plaintiffs for attorneys' fees, costs, expenses, interest, and incentive awards; (d) the Action until the Final Judgment contemplated hereby have become effective and each and every act agreed to be performed by the parties all have been performed pursuant to the Settlement Agreement; (e) hearing and ruling on any matters relating to the Plan of Allocation of settlement proceeds; and (f) all parties to the Action and Releasors for the purpose of enforcing and administering the

---

In this case, however, the Court approves the parties' request. Unlike other kinds of orders that might affect the rights and obligations of third parties – such as patent claim construction orders, for example, which affect the ability of a patentee to bring infringement claims in the future – the effect of Judge Walker's report and recommendation is limited to the parties here. Also, the effect of the sanctions imposed by the report and recommendation would have been to lighten Plaintiffs' burden at trial. Because the parties have now resolved their differences, there is no need for that relief. Finally, the Court must consider the amount of relief now available to the class as a result of the settlement. See De La O, 2008 WL 4192033 at *1 (considering, among other things, "whether the costs of continuing the action with uncertain results are outweighed by the benefits of the proposed settlement"). In light of the lack of effect Judge Walker's report and recommendation could have outside the case, the absence of need by any party for the relief set forth in that order, and the benefit to the class from the settlement, the Court concludes that vacating Judge Walker's report and recommendation is "consonant with equity."

Settlement Agreement and the mutual releases and other documents contemplated by, or executed in connection with, the Settlement Agreement.

12. In the event that the settlement does not become effective in accordance with the terms of the Settlement Agreement, then the Judgment shall be rendered null and void and shall be vacated, and in such event, all orders entered and releases delivered in connection herewith shall be null and void and the parties shall be returned to their respective positions ex ante.

13. The Court finds determines under Rule 54(b) of the Federal Rules of Civil Procedure, that Final Judgment should be entered and further finds that there is no just reason for delay in the entry of Judgment, as Final Judgment, as to the parties to the Settlement Agreement.

14. Accordingly, the Clerk is hereby directed to enter Judgment forthwith for the Mitsubishi Electric Defendants.

IT IS SO ORDERED.

Dated: June 8, 2017

_____
JON S. TIGAR
United States District Judge