Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
Law Offices of Francis O. Scarpulla
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 788-7210
Facsimile: (415) 788-0706
fos@scarpullalaw.com
pbc@scarpullalaw.com
*Interim Co-Lead Counsel for the ORS Subclass*

Theresa D. Moore (99978)
Law Offices of Theresa D. Moore
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 613-1414
tmoore@aliotolaw.com
*Interim Co-Lead Counsel for the ORS Subclass*

Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
Cooper & Kirkham, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415)788-3030
Facsimile: (415) 882-7040
trk@coopkirk.com
jdb@coopkirk.com
*Interim Lead Counsel for the NRS Subclass*

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 4:07-cv-5944-JST <br><br> MDL No. 1917 <br><br> **NOTICE OF MOTION AND MOTION TO STAY** <br><br> Hearing Date: June 10, 2020 <br> Time: 2:00 PM <br> Courtroom: 6, 2nd Floor <br> Judge: Hon. Jon S. Tigar |

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR ATTORNEYS

PLEASE TAKE NOTICE that on June 10, 2020, at 2:00 p.m., before the Honorable Jon S. Tigar, United States District Court for the Northern District of California, 1301 Clay Street, Courtroom 6, 2nd Floor, Oakland, CA 94612, Tyler Ayres, Mike Bratcher, Nikki Crawley, Jay Erickson, Harry Garavanian, John Heenan, Hope Hitchcock, D. Bruce Johnson, Jeff Johnson, Kerry Murphy, Chris Seufert, Robert Stephenson, Gary Talewsky, and William Trentham, (collectively, the "ORS Plaintiffs") and Eleanor Lewis ("NRS Plaintiffs"), by and through undersigned counsel, will move, pursuant to Federal Rule of Civil Procedure 62 and the Court's inherent authority, for a stay of the Court's March 11, 2020 Order Granting Motion for Preliminary Approval. (Dkt. 5695).

This motion is based on this notice, the accompanying memorandum of points and authorities in support of the motion, all other pleadings and papers filed in this action, and such additional evidence or argument that may be presented at the hearing.

**TABLE OF CONTENTS**

| | | Page No. |
|---|---|---|
| I. | INTRODUCTION | 1 |
| | A. The Jurisdictional Issue | 1 |
| | B. Additional Issues | 3 |
| II. | LEGAL STANDARD | 4 |
| III. | A STAY IS NECESSARY AND APPROPRIATE | 4 |
| | A. Likelihood of Success on the Merits | 4 |
| | B. Irreparable Harm to the ORS and NRS Plaintiffs Without a Stay | 8 |
| | C. Whether Stay Will Substantially Injure Other Parties | 9 |
| | D. Where the Public Interest Lies | 10 |
| IV. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Cases                                                                    Page No.

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Al Otro Lado v. Wolf*
    952 F.3d 999 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9

*Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*
    16-CV-03801-DMR, 2017 WL 2378060 (N.D. Cal. June 1, 2017) . . . . . . . . . . . . . . 5

*City of Bangor v. Citizens Communications Co.*
    532 F.3d 70 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*DBSI/TRI IV Ltd. P'ship v. United States*
    465 F.3d 1031 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hilton v. Braunskill*
    481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (2009) . . . . . . . . . . . . . . . . . . . 4

*Immigrant Assistance Project v. I.N.S.*
    306 F.3d 842 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Korean Air Lines Co., Ltd.*
    642 F.3d 685 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*In re Mortgage Elec. Registration Sys. (MERS) Litig.*
    No. MD-09-02119, 2016 WL 3931820 (D. Ariz. July 21, 2016) . . . . . . . . . . . . . . .1

*Kaplan v. Central Bank of the Islamic Republic of Iran*
    896 F.3d 501 (D.C. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Leiva-Perez v. Holder*
    640 F.3d 962 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Mohamed v. Uber Techs., et al.*
    115 F. Supp. 3d 1024 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Morse v. Servicemaster Glob. Holdings, Inc.*
    C 08-03894, 2013 WL 123610 (N.D. Cal. Jan. 8, 2013) . . . . . . . . . . . . . . . . . . . . . 5

*Nken v. Holder*
    556 U.S. 418 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*O'Connor v. Uber Techs., Inc.*
    13-CV-03826-EMC, 2015 WL 9303979 (N.D. Cal. Dec. 22, 2015 . . . . . . . . . . . . . . 5

*Smith v. Arthur Andersen LLP*
    421 F.3d 989, 45 Bankr. Ct. Dec. (CRR) 58, Fed. Sec. L. Rep. (CCH) P 93,341
    (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

| | |
|---|---|
| Cases | Page No. |

*23andMe, Inc. v. Ancestry.com DNA, LLC*
    18-CV-02791-EMC, 2018 WL 5793473 (N.D. Cal. Nov. 2, 2018), *aff'd*, 778
    Fed. Appx. 966 (Fed. Cir. 2019) .................................................. 4

*United States v. City of Los Angeles, Cal.*
    288 F.3d 391 (9th Cir. 2002) ..................................................... 8

*United States v. Ford*
    650 F.2d 1141 (9th Cir.1981) ..................................................... 8

*Waller v. Financial Corp. of America*
    828 F.2d 579, Fed. Sec. L. Rep. (CCH) P 93397, 9 Fed. R. Serv. 3d 92
    (9th Cir. 1987) ..................................................................... 7

*W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*
    643 F.3d 701 (9th Cir. 2011) ..................................................... 8

Statutes and Other Authorities

28 U.S.C. Section 1407 ................................................................. 1, 3

Federal Rules of Civil Procedure, Rule 24 .......................................... 5

NEWBERG ON CLASS ACTIONS § 13:24, *Standing to object – Nonsettling defendants
    and nonparties* (5th ed.) ............................................................ 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

### A. The Jurisdictional Issue

Since this case was remanded by the Ninth Circuit, the indirect-purchaser class members' claims have proceeded on two parallel tracks. Which track a class member traveled was wholly dependent on where in the country that class member lives. While the indirect purchasers in certain states (still calling themselves "the IPPs") [1] proposed a new settlement, (this time dropping the national class from their pleadings and limiting their proposed release to only the claims of those certain IPP states), class members in other states, now called the ORS Plaintiffs [2] and the NRS Plaintiffs, [3] (collectively, ORS/NRS plaintiffs) sought to promote the litigation of their respective claims (through intervention to pursue their long-pending federal claims and amendment to add state-law damages claims).

This multi-track approach might have worked for the ORS, NRS, and IPP groups, but it was derailed when the Court, citing *MERS*[4] with approval, denied intervention to the ORS /NRS plaintiffs' proposed class representatives. The Court concluded that it lacked subject matter jurisdiction over their claims (despite those claims having been in the litigation since its inception) because they had not first filed their claims in the form of separate lawsuits and then sought transfer or consolidation before this Court pursuant to 28 U.S.C. Section 1407. This subject matter jurisdiction deficiency apparently applies only to the ORS and NRS plaintiffs, as the Court found

---

[1] The IPPs proposed settlement subclass includes members from Arizona, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin. (Dkt. 1526).

[2] The ORS subclass consists of class members residing in Arkansas, Massachusetts, Missouri, Montana, New Hampshire, Oregon, Rhode Island, South Carolina, and Utah. (Dkt. 5518).

[3] The NRS subclass consists of class members residing in Alabama, Alaska, Colorado, Connecticut, Delaware, Georgia, Idaho, Indiana, Kentucky, Louisiana, Maryland, New Jersey, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, and Wyoming. (Dkt. 5518; 5646).

[4] *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, No. MD-09-02119, 2016 WL 3931820 (D. Ariz. July 21, 2016).

that the IPPs' identical act of adding new class plaintiffs representing new state-law claims to the IPPs consolidated amended complaint, without instituting separate actions transferred into the MDL, was effective to bring those new class plaintiffs and their claims into these proceedings. Order Denying Mot. to Alter or Amend (Dkt. 5708).

To understand why a stay of the proceedings in this Court is needed, consider that the ORS/NRS plaintiffs have now appealed not only the order denying their Rule 59 motion (Doc. No. 5684), but because that was a final order, they also appealed the other three interlocutory orders.[5] Therefore, there are at least four orders now before the Ninth Circuit. Consequently, if this Court's ruling that it lacked federal jurisdiction to permit the ORS/NRS plaintiffs to intervene in the coordinated actions and file an amended complaint is correct, that reasoning applies perforce to the amendments that the IPPs made to their complaints, which would void all proceedings in their added states since at least 2009.

The distinction that this Court relied upon—that there was opposition to the ORS and NRS intervention motions, but not to the IPPs' amendments—is not sufficient to justify the result. As this Court well knows, federal jurisdiction cannot be conferred upon a court by agreement of the parties, or simply by inaction. *See, e.g., Kaplan v. Central Bank of the Islamic Republic of Iran*, 896 F.3d 501, 511 (D.C. Cir. 2018) ("A defect of subject-matter jurisdiction is non-waivable").

Therefore, if it is correct that this Court lacks federal jurisdiction under the *MERS* standards to permit the intervention of members of a putative national class as new parties and claims in an MDL, that applies as equally to the IPP Plaintiffs as to the ORS/NRS Plaintiffs. Thus, it would be a waste of judicial time and effort to proceed with the IPP portion of the case if the Ninth Circuit affirms this Court's jurisdictional analysis, and rules that the only means of adding new parties and their claims to cases in an MDL proceeding is a transfer or coordination pursuant to 28 U.S.C.

---

[5] Order Denying the Rule 59 Motion to Alter or Amend that February 4, 2020 order entered on April 9, 2020 (Dkt. 5708); Order Granting Motion for Preliminary Approval entered on March 11, 2020 (Dkt. 5695); Order Denying Motion to Intervene and Amend Complaint to Allege State Law Claims for the Other Repealer States (Dkt. 5628). *See* Notices of Appeal (Dkt. 5709 and Dkt. 5711).

Section 1407. Hence, a stay is appropriate.

### B. Additional Issues

There are other cogent reasons why a stay of these proceedings is necessary. As this Court knows, the ORS/NRS plaintiffs were attempting to intervene in the actions in this MDL, the denial of which is before the Ninth Circuit. Should the court of appeal reverse the order denying the intervention and remand to this Court, there will be no proceeding in which to intervene if the IPPs' case were to be over by that time.

This would essentially render the Ninth Circuit proceedings meaningless—if successful, appellants would obtain a ruling that if only the cases were still pending, they would be entitled to intervention as of right. However, that is not the only reason that it is important that the actions into which the ORS/NRS Plaintiffs sought intervention remain pending until the Ninth Circuit can rule. Since remand, the Defendants have made clear that they will seek dismissal of the ORS and NRS Plaintiffs claims on the basis that they are untimely. (Dkt. 5592 at 12-15, 17-18). And the ORS and NRS Plaintiffs have responded that class action tolling and the relation back doctrine dooms that argument because an "amendment adding a party plaintiff relates back to the date of the original pleading" if certain requirements are met. (Dkt. 5645 at 17) (quoting *Immigrant Assistance Project v. I.N.S.*, 306 F.3d 842, 857 (9th Cir. 2002)).

But the relation back doctrine, according to the defendants, applies only to "amendments" of the complaint within an already-pending action—not to new complaints. (Dkt. 5663). So if this Court does not grant the stay of the IPP proceedings, and the Ninth Circuit reverses the intervention order when there is no longer a proceeding into which the ORS/NRS plaintiffs can intervene, the ORS/NRS Plaintiffs will have no option but to file new actions (whatever their intervention rights should have been). Accordingly, they will be forced to defend an issue that would not have arisen on intervention—whether their complaints should be denied the benefit of the relation back doctrine. This is fundamentally unfair. The Ninth Circuit needs to be given the opportunity to exercise its jurisdiction to consider the proper procedure by which the ORS/NRS Plaintiffs (who have been class members in the MDL indirect purchaser class actions since their inception)

become the representatives of their newly recognized subclasses. This Court should take no action that will compromise the outcome of the pending appeals or any party's position following the resolution of the appeals.

Fundamental fairness requires that the Court stay these proceedings until the ORS/NRS appeals are decided.

**II. LEGAL STANDARD**

A court considers four factors when determining whether to issue a stay: (1) whether the stay applicant has made a strong showing of likely success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The first two factors of the traditional standard are the most critical." *Id.* In applying these factors, the Ninth Circuit employs a "sliding scale" approach whereby "the elements of the ... test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).[6]

**III. A STAY IS NECESSARY AND APPROPRIATE**

**A. Likelihood of Success on the Merits**

To demonstrate a likelihood of success on appeal, the party seeking a stay is not required to "show[ ] that success is more likely than not." *Leiva-Perez*, 640 F.3d at 967–68. Instead, "a petitioner must show, at a minimum, that she has a substantial case for relief on the merits." *Id.* This standard can be satisfied by a showing that the movant's "appeal raises 'serious

---

[6] The *Nken* "standard is applicable when there is a request to stay a district court's judgment or order pending an appeal of the same case." *23andMe, Inc. v. Ancestry.com DNA, LLC*, 18-CV-02791-EMC, 2018 WL 5793473, at *3 (N.D. Cal. Nov. 2, 2018), *aff'd*, 778 Fed. Appx. 966 (Fed. Cir. 2019); *see also Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (2009) (stating that "[d]ifferent Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal" but, "[u]nder both Rules, ... the factors regulating the issuance of a stay are generally the same" – similar to the preliminary injunction factors).

legal questions' even if the moving party has only a minimum chance of prevailing on these questions," as long as the potential harm that could befall the movant absent a stay is serious. *O'Connor v. Uber Techs., Inc.*, 13-CV-03826-EMC, 2015 WL 9303979, at *1 (N.D. Cal. Dec. 22, 2015).

While the Ninth Circuit has not "exhaustively explained or defined what makes a question 'serious,'" several courts in this district have "shed light on the issue." *Mohamed v. Uber Techs., et al*, 115 F. Supp. 3d 1024, 1028 (N.D. Cal. 2015). The collective consensus is that a party can show that he has a substantial case for relief if his case "raises genuine matters of first impression within the Ninth Circuit" or which may "otherwise address a pressing legal issue which urges that the Ninth Circuit hear the case." *Morse v. Servicemaster Glob. Holdings, Inc.*, C 08-03894, 2013 WL 123610, at *3 (N.D. Cal. Jan. 8, 2013); *see also Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, 16-CV-03801-DMR, 2017 WL 2378060, at *3 (N.D. Cal. June 1, 2017) (same).

Here, the ORS/NRS Plaintiffs' have appealed two core determinations: (1) the Court's orders denying intervention to them; and (2) the Court's order preliminarily approving the IPPs' current proposed settlement, which held as a matter of law that the ORS/NRS plaintiffs did not have standing to object to the IPPs' pending proposed settlement. This appeal raises genuine matters of first impression and, thus, shows that a stay is justified, because this Court's jurisdictional ruling relied on *MERS*, an unpublished opinion of the District of Arizona, which ruling was never reviewed by the Ninth Circuit.

Moreover, the Court's second order denying intervention touches on uncharted areas of MDL law—namely whether an intervening, unnamed class member can amend pleadings already filed in actions within an MDL, either by way of amendment or intervention pursuant to Rule 24 of the Federal Rules of Civil Procedure, and, if not, how and where such pleadings are to be properly filed. While the Ninth Circuit has clearly stated that an MDL judge "inherits the entire pretrial jurisdiction that the transferor district judge[s] would have exercised if the [MDL] transfer had not occurred," *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, at 699 (9th Cir. 2011), and lower

courts have concluded that this means that all provisions of the Federal Rules of Civil Procedure apply, including the power to allow amendment of the transferred actions, the specific question has not been addressed by the Ninth Circuit. The novelty of the issue and the need for appellate guidance is buttressed by the Court's reliance on unpublished district court decisions in justifying its denial of class members' intervention.

The Court's preliminary approval order striking the ORS and NRS Plaintiffs' objections for lack of standing rests on equally un-tread footing. *First*, if the Court is correct that it lacks jurisdiction to permit new plaintiffs to be added who do not institute their claims as actions outside of the MDL proceeding, then it also lacks jurisdiction to approve the IPPs' proposed settlement. It is indisputable, that many of the state-law class claims filed by the IPPs, which are now the subject of the preliminarily-approved settlements, rest on pleadings that include class members that were added directly by amendment into actions in this MDL litigation, without first filing in their respective resident states. If the Court's jurisdictional ruling that it is without subject matter jurisdiction as to plaintiff and claims added by amendment and intervention is correct, then that same jurisdictional impediment applies to the IPPs' current settlements.

*Second*, jurisdictional deficiency aside, the Court's "standing" determination in its preliminary approval order is wrong and presents an issue of first impression in the Ninth Circuit. The Court struck the ORS and NRS Plaintiff's objections on the basis that they are "not members of the amended settlement Class and have no standing to object to IPP Plaintiffs' motion for preliminary approval of the amended settlements," citing as support several district court orders standing for the unremarkable proposition that individuals whose rights will not be affected by the proposed settlement cannot object to it. (Dkt. 5695 at 6-7). But that's not the case here.

The right to object is not limited solely to members of a proposed settlement class. Indeed, even non-parties to a proposed settlement have standing to object when their "rights *are* impacted by [that] proposed settlement." NEWBERG ON CLASS ACTIONS § 13:24, *Standing to object—Nonsettling defendants and nonparties* (5th ed.). Accordingly, even if the ORS/NRS Plaintiffs were truly non-parties (in fact, they are actual class members in the still-certified national class,

though that will end if the Court grants final approval to the new proposed settlement before the ORS/NRS Plaintiffs are permitted to intervene and allege their subclass claims), they would have standing to object to the proposed settlement because it adversely affects them, as, inter alia, an approved settlement eliminating the cases into which they may intervene could render their pending appeal moot.

It does not appear that the Ninth Circuit has addressed the specific contours of non-party standing as applied to settlement objection. However, other circuit courts have already disagreed with this Court's conclusion that only putative class members that are parties to a proposed settlement have Article III standing to object. *See, e.g., City of Bangor v. Citizens Communications Co.*, 532 F.3d 70, 92 (1st Cir. 2008) (finding that objector-appellants had standing to object because they were "potentially affected by the settlement"). And it is likely that the Ninth Circuit will agree with this more expansive standing construction.

In fact, given that the Ninth Circuit previously endorsed the legal principal that a non-settling *defendant* (which similarly has no direct stake in the proposed settlement) has standing to object if its rights are affected, the Ninth Circuit is more than likely to find that this principle applies to non-settling members of different subclasses in the same litigation whose rights are affected by a settlement. *See Smith v. Arthur Andersen LLP*, 421 F.3d 989, 998, 45 Bankr. Ct. Dec. (CRR) 58, Fed. Sec. L. Rep. (CCH) P 93,341 (9th Cir. 2005) (noting general exception to the rule that non-settling defendant may not object to settlement where defendant can "demonstrate that it will sustain formal legal prejudice as result of the settlement" (quoting *Waller v. Financial Corp. of America*, 828 F.2d 579, 583, Fed. Sec. L. Rep. (CCH) P 93397, 9 Fed. R. Serv. 3d 92 (9th Cir. 1987)) (internal quotation marks omitted)).

The IPPs' proposed settlement will adversely affect the ORS/NRS plaintiffs. Indeed, if the IPP settlement is allowed to proceed, the ORS/NRS plaintiffs—actual class members in the still-extant national class—will, potentially, lose not only their class member status but the ability to intervene into this case as class members (and assert the ORS/NRS subclasses the Court has earlier found appropriate during the remand proceedings). In light of that inescapable harm to the

ORS/NRS Plaintiffs, the *status quo* should be preserved by a stay while they ask the Ninth Circuit to consider whether they have standing to object to the IPPs' amended settlement.

### B. Irreparable Harm to the ORS and NRS Plaintiffs Without a Stay

To obtain a stay, a movant "must demonstrate that irreparable harm is probable if the stay is not granted." *Leiva-Perez*, 640 F.3d at 968. The analysis focuses on whether "irreparable injury is likely to occur during the period before the appeal is likely to be decided." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020).

As explained above, if the IPPs' proposed settlement is allowed to proceed while the ORS/NRS Plaintiffs' appeal is pending, it is possible that there will be no "action" in which they can intervene, even if the Ninth Circuit rules that they satisfy the criteria for intervention as of right in the cases now pending. This danger is not hypothetical. Indeed, the Ninth Circuit has dismissed appeals as moot on similar grounds. *See W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) (dismissing an appeal as moot where the appellant appealed an order denying a motion to intervene and, during the appeal, the underlying case "ran its course," explaining that "[a]n appeal is moot if there exists no present controversy as to which effective relief can be granted.") (internal citation omitted); *United States v. Ford,* 650 F.2d 1141, 1143 (9th Cir.1981) (dismissing as moot an appeal of a denial of a motion to intervene where the underlying litigation was voluntarily dismissed, and explaining that "[s]ince there is no longer any action in which appellants can intervene, judicial consideration of the [intervention] question would be fruitless").

While there is some conflicting precedent on mootness where the appellant can still obtain relief in the trial court,[7] such precedent—even if it creates a lack of certainty regarding mootness—

---

[7] *See DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1037 (9th Cir. 2006) ("Although the district court entered final judgment in the underlying case during the pendency of the appeal, the intervention controversy is still alive because, if it were concluded on appeal that the district court had erred in denying the intervention motion, and that the applicant was indeed entitled to intervene in the litigation, then the applicant would have standing to appeal the district court's judgment.") (internal citation omitted); *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 404–05 (9th Cir. 2002) ("Any intervention order issued on remand shall allow the affected parties

does not undermine the ORS and NRS motion for stay. After all, the governing standard hardly requires *certain* irreparable harm to result. *Al Otro Lado*, 952 F.3d at 1007; *Leiva-Perez*, 640 F.3d at 968.

Moreover, the current appeal may be the only avenue for the ORS and NRS Plaintiffs to seek a review of the Court's ruling that the ORS and NRS Plaintiffs do not have standing to object to the IPPs' proposed amended settlement. If this appeal were rendered moot by this Court granting final approval of the proposed settlement before the appeal can be decided on its merits, it would at least give rise to the argument that this confers "finality" on the determination of lack of standing such that the ORS and NRS Plaintiffs may not make objections to or take appeals from the denial of those objections in any final judgment approving the IPPs' amended settlement. Accordingly, given the uncertainty surrounding whether the ORS and NRS Plaintiffs' pending appeal will be rendered moot while it is pending, a stay is appropriate.

### C. Whether A Stay Will Substantially Injure Other Parties

The settling IPPs and Defendants will not be substantially harmed by the entry of a stay. As an initial point, if the Court is correct that it was without subject matter jurisdiction over parties and claims added by intervention or amendments, then the Court is without jurisdiction to approve the IPPs' settlement. In light of that potential lack of jurisdiction, the parties and the Court will actually benefit from a stay if the Court's jurisdictional determination is ultimately approved, as it will prevent unnecessary judicial labor presiding over the settlement of claims that are not properly before this Court. Similarly, if the ORS/NRS Plaintiffs are successful on appeal, a stay will still not prejudice the Defendants or IPPs. The Defendants—if the ORS/NRS Plaintiffs are successful on appeal—will remain defendants in any further litigation taking place upon remand. They will suffer no harm. In fact, they will be in precisely the same position they were in before the notices of appeal were filed—able to settle IPPs' claims and litigate against the ORS and NRS Plaintiffs.

---

to intervene as of the date of the intervention order and to be treated as intervener parties from that date forward.").

While it is true that the class members in the IPP states will have to wait a little longer for their settlement payments, under this Court's preliminary approval order, the original settlement funds, which remain in escrow, and will continue to accrue interest, which will ultimately benefit the class. (Dkt. 5695 at 5-6). Further, a delay of the payment is a common corollary to class action appeals and by itself does not cause unfair prejudice. No party will be harmed by a stay.

### D. Where the Public Interest Lies

The final factor turns on whether public interest weighs in favor of granting a stay. Here, it does. No one can dispute that every harmed citizen of every state is equally entitled to due process in pursuit of the fullest redress provided by law from the Defendants' alleged price-fixing conspiracy. Correctly determining what rights and procedures may be employed in that pursuit by persons within the class definitions in actions that formed MDL proceedings has implications well beyond the particular redress sought against these Defendants here. The pending appeals also raise the public policy question of what obligations, if any, are owned to the greater good of a nationwide class by individual subclasses seeking to maximize their particular settlement interests. Allowing the IPPs' subclass settlement to proceed apace when it could potentially eviscerate both these appeals and any potential recovery for the ORS and NRS subclasses would set a precedent that any fiduciary duty owed to the national class must give way to an adversarial free-for-all that in this litigation, once again prioritizes the claims of the so called "IPP" states to the prejudice of the ORS and NRS subclasses. We do not believe that this division of the class action device into extremely adversarial subclasses, who owe no allegiance to a common good, and are free to destroy each others' interests at will can ever be said to be in the public interest. Nor do we believe that it is in keeping with the Ninth Circuit's intent when it remanded the previous settlement appeals so that *all* indirect-purchaser class members could be treated fairly. A stay will ensure that every potential claimant's claim is counted and not jeopardized merely to ensure more expedient payment for a subset of the population.

///

///

## IV. CONCLUSION

The Court should grant this motion for stay pending the resolution of the ORS and NRS Plaintiffs' pending appeal.

Dated: May 6, 2020                                    Respectfully submitted,

 /s/  Theresa D. Moore                                 /s/  Francis. O. Scarpulla
       Theresa D. Moore                                      Francis O. Scarpulla

Theresa D. Moore (99978)
Law Offices Of Theresa D. Moore
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 613-1414
tmoore@aliotolaw.com
*Interim Co-Lead Counsel
for the ORS*

Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
Law Offices of Francis O. Scarpulla
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: 415-788-7210
fos@scarpullalaw.com
pbc@scarpullalaw.com

*Interim Co-Lead Counsel
for the ORS*

  /s/  Tracy R. Kirkham
       Tracy R. Kirkham

Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
Email:  trk@coopkirk.com
            jdb@coopkirk.com
*Interim Lead Counsel for Non-Repealer State Subclass*

Christopher A. Nedeau (81297)
Nedeau Law Firm
154 Baker Street
San Francisco, CA 94117
Telephone: (415) 516-4010
cnedeau@nedeaulaw.net

*Counsel for the ORS*

John G. Crabtree, *appearing pro hac vice*
Brian Tackenberg, *appearing pro hac vice*
Crabtree & Auslander
240 Crandon Boulevard, Suite 101
Key Biscayne, FL 33149
Telephone:  (305) 361-3770
jcrabtree@crabtreelaw.com
btackenberg@crabtreelaw.com

*Counsel for the ORS*

Brian M. Torres, *appearing pro hac vice*

Brian M. Torres, P.A.
One S.E. Third Avenue, Suite 3000
Miami, FL 33131
Telephone: (305) 901-5858
btorres@briantorres.legal

*Counsel for the ORS*

# CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed *via* CM/ECF on May 6, 2020 and as a result has been served on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Francis O. Scarpulla
Francis O. Scarpulla